UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAISHA JENELL MORRIS,

               Plaintiff,                   CIVIL ACTION NO. 11-10395

          v.                         DISTRICT JUDGE NANCY G. EDMUNDS

COMMISSIONER OF                MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

               Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

## I.    PROCEDURAL HISTORY

### A.    *Proceedings in this Court*

On January 31, 2011, Plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits (Dkt. No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability insurance benefits (Dkt. No. 3). This matter is currently before the Court on cross-motions for summary judgment (Dkt. Nos. 11, 12).

### B.    *Administrative Proceedings*

Plaintiff filed the instant claims on January 27, 2008, alleging that he became unable to work on June 19, 2007 (Tr. 39, 106-110). The claim was initially disapproved by the Commissioner on April 21, 2008 (Tr. 39, 63-66). Plaintiff requested a hearing and, on February 2, 2010, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) Theodore W. Grippo, who

considered the case *de novo*.  In a decision dated May 26, 2010, the ALJ found that Plaintiff was not disabled (Tr. 36-59).  Plaintiff requested a review of this decision on June 30, 2010 (Tr. 6).  The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC-11E, Tr. 185-194), the Appeals Council, on December 17, 2010, denied Plaintiff's request for further review (Tr. 1-5).

In light of the entire record in this case, I find that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled.  Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.      STATEMENT OF FACTS

### A.      *ALJ Findings*

Plaintiff was 30 years old on her alleged disability onset date (Tr. 53).  Plaintiff has past relevant work as a corrections officer, a pharmacy technician and an armored car guard (Tr. 52, 150). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since June 19, 2007 (Tr. 41).  At step two, the ALJ found that Plaintiff had the following "severe" impairments:  degenerative disc disease, brain tumor status-post resection and affective disorder.  *Id*.  At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations (Tr. 42-45).  Between steps three and four, the ALJ found that Plaintiff had the Residual

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

Functional Capacity (RFC) to perform "light work...except: [Plaintiff] is limited to occasional climbing, balancing, stooping, crouching and crawling; and, [Plaintiff] is limited to simple, low-stress work" (Tr. 45).  At step four, the ALJ found that Plaintiff could not perform her previous work as a corrections officer, pharmacy technician or armored car guard (Tr. 52).  At step five, the ALJ denied Plaintiff benefits, because the ALJ found that Plaintiff could perform a significant number of jobs available in the national economy, such as sorter (1,200 jobs in regional economy and 84,000 jobs in the national economy), packer (3,000 jobs in the regional economy and 240,000 jobs in the national economy) or order filler (4,000 jobs in the regional economy and 231,000 jobs in the national economy) (Tr. 53-54).

> **B.**    *Administrative Record*

> **1.**    **Plaintiff's Testimony and Statements**

Plaintiff stated in a Function Report that she lived with and cared for her young daughter (Tr. 142-43).  Plaintiff further stated that she managed her personal care, prepared simple meals, performed light housework, drove a car, left home alone, and went shopping (Tr. 143-45).  Plaintiff stated that she was able to lift between fifteen and twenty pounds and could pay her bills, count change, handle a savings account and use a checkbook (Tr. 146-47).  Plaintiff noted that she could follow written instructions, if they were not long, and could follow spoken instructions better than written instructions (Tr. 147).  At the hearing, Plaintiff testified that she had crying spells, and was being treated for depression and anxiety (Tr. 23).

> **2.**    **Medical Evidence**

Plaintiff alleged disability due to various functional limitations resulting from her neck pain, low back pain, left knee pain, left hand deficits, shortness of breath, bilateral hearing loss, vision deficits, chronic headaches and depression and anxiety.

### I) Evidence of Physical Impairments

In June 2007, Plaintiff was admitted to the hospital following a car accident (Tr. 212-36). She had contusions to her head, right arm, and right hip, and complained of neck and back pain (Tr. 212, 215). A month later, Plaintiff began seeing a physiatrist, Dr. Hyman, for her injuries, and complained of pain on her right side (Tr. 359-60). On exam, Plaintiff exhibited full muscle strength, intact sensation, and symmetrical reflexes (Tr. 360). She also had a full range of motion of the cervical spine, right shoulder, and right hip (Tr. 360). Dr. Hyman prescribed medication and physical therapy (Tr. 360).

In September 2007, Plaintiff began a Functional Recovery Program with a Dr. Ellenberg, on referral from Dr. Hyman (Tr. 349). In December 2007, Dr. Ellenberg noted that Plaintiff had an underlying lower back problem that was exacerbated by the car accident (Tr. 331-332). During an evaluation later that month, Plaintiff reported back pain, but Dr. Ellenberg observed that Plaintiff was able to sit comfortably throughout the evaluation (Tr. 326). Dr. Ellenberg noted that Plaintiff had limited back motion and that she walked slowly, but that she had normal range of motion in her legs and arms (Tr. 326). He also noted that Plaintiff had underlying psychoemotional issues (Tr. 326).

At a January 2008 follow-up, Plaintiff said that she did not feel she could return to her past work as a corrections officer but that she could do clerical work (Tr. 324). Dr. Hyman stated that he would support Plaintiff's return to work in a clerical position (Tr. 324). In February 2008, Dr. Hyman said that Plaintiff had minimal radicular pain, mild back pain, and some thigh pain when climbing stairs or sitting the wrong way (Tr. 321). He reiterated that Plaintiff would be "perfectly fine" working in a clerical position (Tr. 321).

In October 2007, Plaintiff underwent an independent medical evaluation by Dr. Campbell for private disability insurance purposes (Tr. 293-97). At the evaluation, Plaintiff reported pain in her lower back, right thigh, and hip (Tr. 295). Plaintiff was able to heel and toe walk, and get on and off the examination table without difficulty (Tr. 295-96). Her range of motion of the cervical spine and motor power testing in her extremities were within normal limits (Tr. 296). A detailed examination of the right lower extremity revealed no visible abnormality (Tr. 296). Dr. Campbell found no objective findings to support Plaintiff's allegations of right leg pain (Tr. 296).

Dr. Foster, Plaintiff's primary care physician, treated Plaintiff shortly after her car accident (Tr. 649). In February 2008, Dr. Foster wrote in his treatment notes, "from my point of view . . . she can work" (Tr. 590). In August 2008, Dr. Foster wrote a letter in support of Plaintiff's disability claim stating that Plaintiff was "still unable to return to work" (Tr. 649). Dr. Foster wrote that Plaintiff's physical impairments persisted with only temporary improvement, and that she would need to return to physical therapy (Tr. 649). Dr. Foster also stated that Plaintiff needed to take pain medication to perform her activities of daily living (Tr. 649).

In January 2010, Dr. Foster responded to a questionnaire concerning Plaintiff's workplace limitations, in which he stated that Plaintiff had depression and anxiety, and that her pain was severe enough to constantly interfere with her attention and concentration to perform simple work tasks (Tr. 795). Dr. Foster opined that Plaintiff was incapable of performing low stress jobs (Tr. 795). He indicated that Plaintiff could walk four blocks without rest or severe pain, and could sit for thirty minutes and stand for fifteen minutes at a time each (Tr 795). Dr. Foster opined that Plaintiff could sit for at least six hours in an eight-hour day and stand/walk for less than two hours in a workday (Tr. 796). He indicated that Plaintiff would need a job that permitted shifting between sitting, standing, and walking at will, and that she would need to take unscheduled breaks every one to two hours (Tr.

796). Dr. Foster also stated that Plaintiff could carry up to ten pounds frequently and twenty pounds occasionally (Tr. 796). He noted several postural limitations and opined that Plaintiff would need to be absent from work more than four days per month (Tr. 797).

In April 2008, Dr. Nasol – a state agency physician – reviewed Plaintiff's records and found that Plaintiff's complaints of severe pain in her upper and lower extremities were poorly supported by the objective medical data and that her functional limitations were primarily due to her mental issues (Tr. 599). Dr. Nasol found that Plaintiff could lift ten pounds frequently and twenty pounds occasionally, and stand/walk for about six hours in an eight-hour day and sit for about six hours in an eight-hour day (Tr. 599). Dr. Nasol found several postural limitations (Tr. 600). Dr. Nasol found that, overall, Plaintiff was not significantly limited physically and that she was capable of managing her own personal care (Tr. 600).

### ii) Evidence of Mental Impairments

Dr. Beshears treated Plaintiff through February 2008 (Tr. 365, 495). In February 2006, more than one year before allegedly being unable to work, Plaintiff reported that she had panic attacks and was prone to crying spells (Tr. 367). In July 2007, just after her car accident, Plaintiff told Dr. Beshears that she felt depressed and overwhelmed (Tr. 456). In November 2007, December 2007, and January 2008, Dr. Beshears noted that Plaintiff was emotionally stable (Tr. 483, 486, 489).

In early April 2008, Dr. Cho examined Plaintiff at the request of the state agency (Tr. 594-97). Plaintiff was coherent, oriented, polite, and cooperative (Tr. 596). She was generally able to perform calculations, retain memory, process information, and exercise judgment (Tr. 596-97). Plaintiff reported that she was stressed due to her financial situation and that she was drinking a pint of alcohol per day (Tr. 595). Dr. Cho diagnosed Plaintiff with dysthymic disorder (chronic

depression), panic disorder, and alcohol dependence (Tr. 597).  Dr. Cho noted that Plaintiff's prognosis was poor and that she was unable to handle her own funds due to alcohol abuse (Tr. 597).

Later that month, Dr. Czarnecki, a state agency psychiatrist, reviewed the records of Dr. Beshears and Dr. Cho (Tr. 610-12).  Dr. Czarnecki found that Plaintiff had mild restrictions in her activities of daily living, moderate difficulties in maintaining social functioning and maintaining concentration, persistence, or pace, and no episodes of decompensation (Tr. 624).  On a worksheet, Dr. Czarnecki indicated that Plaintiff was not significantly limited in thirteen of twenty categories and moderately limited in seven (Tr. 610-11).  Dr. Czarnecki noted that Plaintiff was able to take care of herself and her daughter, and was able to prepare meals, do chores, drive, shop, and manage her finances (Tr. 612).  He found that Plaintiff retained the mental capacity to sustain an independent routine of simple work activity (Tr. 612).  He also found that Plaintiff could tolerate low stress social demands and adapt to simple changes in routine, but may be limited in meeting more complex and detailed work demands (Tr. 612).

Plaintiff received a neuropsychological evaluation from Dr. Fichtenberg in July 2008 (Tr. 662-68).  Plaintiff reported that she could independently care for herself, cook, drive, manage her money, care for her five-year old daughter, administer her medication, and make decisions (Tr. 664).  Plaintiff reported multiple symptoms of depression, but on exam, her attention, learning, cognition, and memory were intact and normal (Tr. 665-66).

In September 2008, Dr. Beshears opined in a letter that Plaintiff's emotional and psychological functioning declined after her June 2007 car accident and he gave Plaintiff a Global Assessment of Functioning Score (GAF) of 40 to 45 (Tr. 655).[2]  Dr. Beshears also indicated that

---

[2]   The GAF score is "a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of

Plaintiff was having difficulty with her finances which led to depression, and stated that, at that time, Plaintiff was unable to work (Tr. 655).

Dr. Smith, a psychologist, began treating Plaintiff in June 2009 (Tr. 719). In October 2009, Dr. Smith stated that Plaintiff had depression and anxiety, and gave Plaintiff a GAF score of 50 to 55 (Tr. 719). Dr. Smith noted that Plaintiff's symptoms were due to her financial stress, and stated that she was unable to work (Tr. 719).

### 3.    Vocational Expert

A vocational expert (VE) testified at the hearing. The VE identified Plaintiff's past relevant work as a corrections officer, pharmacy technician and armored car guard (Tr. 27). The ALJ asked the VE to assume an individual with Plaintiff's age, education, and vocational background who could perform light work, but was limited to occasional climbing, stooping, crouching, crawling, and kneeling, and further limited to simple work in a low stress environment (Tr. 28). Based on these assumptions, the VE testified that this individual could work a number of jobs including sorter, packer or order filler (Tr. 28).

### C.    *Plaintiff's Claims of Error*

Plaintiff raises three arguments on appeal: (1) that the ALJ did not consider all of Plaintiff's mental limitations when formulating Plaintiff's RFC; (2) that the ALJ failed to address a September 2008 letter from Plaintiff's treating physician – Dr. Beshears; and (3) that the ALJ erring by failed to give two of Plaintiff's treating physicians – Drs. Smith and Foster – controlling weight.

---

death). A GAF score of 31-40 indicates some impairment in reality testing or communication (*e.g.*, speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood. A GAF of 41 to 50 means that the patient has serious symptoms . . . OR any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job). A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009). "A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 502 fn. 7 (6th Cir. 2006).

## III.     DISCUSSION

### A.     *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *See Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *See Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*,

502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has

-10-

been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B.     Governing Law

The "[c]laimant bears the burden of proving her entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

-12-

**C.      Analysis and Conclusions**

As noted earlier, Plaintiff raises three arguments on appeal.  Each of Plaintiff's arguments is considered below:

**1.      Concentration, Persistence and Pace**

Plaintiff's first argument on appeal is that the ALJ failed to account for all of Plaintiff's mental limitations when arriving at Plaintiff's RFC.  Specifically, Plaintiff avers that the ALJ gave "great weight" (Tr. 50) to the opinion of the state agency psychological consultant – Dr. Czarnecki – but did not then include all the moderate restrictions found by Dr. Czarnecki into the RFC.  Indeed, in the RFC, the ALJ found that Plaintiff retained the ability to perform "simple, low-stress work," despite the moderate restrictions indicated by Dr. Czarnecki (Tr. 45).

The issue of whether hypothetical limitations such as "simple" "routine" "low-stress" and "unskilled" adequately account for moderate concentrational deficiencies is not uncommon and the case law in this District resolves it both ways.  Indeed, there is relevant authority ordering remand where an ALJ's hypothetical does not include a specific reference to moderate limitations in concentration or pace and only limits the hypothetical individual to unskilled work or simple, routine low-stress tasks.[3]  However, there is also authority that has found that an ALJ formed an accurate

---

[3]   *See e.g., Benton v. Comm'r of Soc. Sec.*, 511 F.Supp.2d 842, 849 (E.D. Mich. 2007) ("Here, the ALJ found that although Plaintiff has a moderate deficiency in her ability to maintain concentration, persistence, and pace, she is able to perform simple, routine, repetitive work. However, the limitations included in the hypothetical question and the VE's testimony regarding the effect a lack of concentration has on the jobs mentioned was insufficient to suitably accommodate Plaintiff's concentration limitations."); *Green v. Comm'r of Soc. Sec.*, No. 08–11398, 2009 WL 2365557, at *10 (E.D. Mich. July 28, 2009) ("In the present case, while finding that Plaintiff is 'moderately limited with concentration, persistence, and pace,' [the ALJ's] only limitations were with co-workers and the public, and to "unskilled, light jobs." These parameters are not sufficient, and do not fully convey Plaintiff's limitations in concentration to the VE. Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at an unskilled job." (internal citations omitted)); *Long v. Comm'r of Soc. Sec.*, No. 09–14227, 2010 WL 6413317, at *7 (E.D. Mich. Dec.6, 2010) ("In the present case, the ALJ gave Plaintiff the mental limitation for 'simple unskilled work.' However, the ALJ also determined that 'with regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties.' The ALJ did not incorporate [that] limitation ... into the controlling hypothetical. This was error." (internal citations omitted)); *Perkins v. Comm'r of Soc. Sec.*, No. 10–10089, 2010 WL 5634379, at *9 (E.D. Mich. Dec. 14, 2010) (same).

-13-

hypothetical by limiting the claimant to unskilled work and omitting a moderate concentration or pace limitation.[4]

In analyzing this case law, the undersigned agrees that a hypothetical simply limiting a claimant to unskilled work may, in some instances, fail to capture a claimant's moderate limitation in concentration, persistence, or pace because the difficulty of a task does not always equate with the difficulty of staying on task.  *See e.g., Green v. Comm'r of Soc. Sec.*, No. 08–11398, 2009 WL 2365557, at * 10 (E.D. Mich. July 28, 2009) ("It is difficult to reasonably accept 'moderate' meaning anything less than 20%–30% of the time at work. Thus, 'moderate' concentration problems ... need to be included or accommodated in some suitable fashion in the hypothetical question at Step 5 of that sequence. Simply including the hypothetical of unskilled jobs with limited contact with co-workers and the public is not sufficient."); *Edwards v. Barnhart*, 383 F.Supp.2d 920, 930 (E.D. Mich. 2005) ("Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job.").

However, the undersigned also finds that there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of "simple work" but excludes a moderate limitation in concentration.  Rather, this Court must look at the record as a whole and determine if

_____

[4] *See e.g., Hess v. Comm'r of Soc. Sec.*, No. 07–13138, 2008 WL 2478325, at *7–8 (E.D. Mich. June 16, 2008) ("Taken in isolation, the hypothetical limitations consisting of '[s]imple routine tasks in a low stress environment' and 'minimal changes in the work place setting' might appear inadequate to account for 'moderate' concentrational and pacing deficiencies. However, the record as a whole indicates that the hypothetical question and the ALJ's finding of 'moderate' limitations ... are not incompatible ."); *Latare v. Comm'r of Soc. Sec.*, No. 08–13022, 2009 WL 1044836, at *3 (E.D. Mich. April 20, 2009) ("The Law Judge's hypothetical questions to the Vocational Expert accurately described Plaintiff's moderate limitations caused by her depressive disorder. There is no merit to Plaintiff's argument that the ALJ should have included a limitation that she had moderate limitations in maintaining concentration, persistence or pace. Unskilled work, by definition, is limited to understanding, remembering and carrying out only simple instructions and requiring little, if any, judgment."); *Lewicki v. Comm'r of Soc. Sec.*, No. 09–11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010) ("There may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks. Plaintiff does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace.").

substantial evidence supports the ALJ's RFC. *See Hess v. Comm'r of Soc. Sec.*, No. 07–13138, 2008 WL 2478325, at *7 (E.D. Mich. June 16, 2008); *see also Lewicki v. Comm'r of Soc. Sec.*, No. 09–11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010) ("There may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks. Plaintiff does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace.").

In this case, the ALJ's limitation of "simple, low-stress work" accurately reflects Dr. Czarnecki's opinion as to Plaintiff's moderate limitations, which is the opinion, as discussed above, that the ALJ gave most weight. Dr. Czarnecki indicated that Plaintiff was not significantly limited in thirteen of twenty categories and moderately limited in seven (Tr. 610-11). Dr. Czarnecki noted that Plaintiff was able to take care of herself and her daughter, and was able to prepare meals, do chores, drive, shop, and manage her finances (Tr. 612). Dr. Czarnecki explicitly stated that Plaintiff "retained the mental capacity to sustain an independent routine of simple work activity" (Tr. 612). He also found that Plaintiff could tolerate low stress social demands and adapt to simple changes in routine, but may be limited in meeting more complex and detailed work demands (Tr. 612). In sum, Dr. Czarnecki's narrative opinion is not significantly different than the ALJ's RFC, which limited Plaintiff to "simple, low-stress work." As such, Plaintiff's first argument on appeal is not well-taken.

## 2.    Dr. Beshears' 2008 Letter

Plaintiff's second argument on appeal is that the ALJ erred by failing to specifically address a September 2008 letter from Dr. Beshears, in which Dr. Beshears stated that Plaintiff "is not able to work both for physical and emotional reasons..." (Tr. 655). Plaintiff's second argument is not

well-taken.   Initially, as Defendant correctly notes, it is well-settled that the ultimate issue of disability is reserved to the Commissioner.  *See* 20 C.F.R. § 404.1527(e) (1); *Kidd v. Comm'r of Soc. Soc.*, 283 F. App'x 336, 341 (6th Cir. 2008); *Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 475–76 (6th Cir. 2008).  The ALJ therefore was not bound by the opinion of Dr. Beshears that Plaintiff was unable to perform any type of job.

The ALJ did consider Dr. Beshears' findings and cited his treatment notes in the decision (Tr. 48), but the ALJ did not cite to the September 2008 letter at issue.  However, there is no requirement, that either the ALJ or this Court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party" (internal quotation marks omitted)).  I find that any omission of Dr. Beshears' September 2008 letter from the ALJ's decision is harmless error because it would not have altered or otherwise changed the ALJ's finding that Plaintiff could still work.  *See Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) (". . . if an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.").  The ALJ considered the opinions from other treating sources and state agency doctors who assessed whether Plaintiff had the capacity to work.  Notably, Dr. Hyman, Dr. Nasol, and Dr. Czarnecki, who all indicated that Plaintiff could work (Tr. 321, 324. 600, 612).  Therefore, a remand to require the ALJ to specifically address Dr. Beshears' conclusory opinion contained in his September 2008 letter is simply not warranted.

-16-

### 3.      Plaintiff's Treating Physicians

Plaintiff's final argument on appeal is that the ALJ erred by failing to give controlling weight to Plaintiff's treating physicians – Drs. Smith and Foster.  As to Dr. Smith – Plaintiff's treating psychologist – Defendant responds that the ALJ reasonably discounted the opinion (Tr. 51), who opined that Plaintiff was unable to work due to physical and emotional reasons (Tr. 719).  Defendant is correct.  First, Dr. Smith's conclusory opinion that Plaintiff could not work is not entitled to controlling weight or deference because it was a legal opinion and not a medical opinion.  As noted above, "treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance."  SSR 96-5p, 1996 WL 374183, *5; *see also* 20 C.F.R. § 404.1527(e)(3).  Furthermore, the ALJ reasonably gave this conclusory opinion "limited weight" because Dr. Smith only treated Plaintiff for less than four months (Tr. 51).  *See* 20 C.F.R. § 404.1527(d)(2)(I) (generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight the agency will give to the source's medical opinion).  Dr. Smith, though, did not provide any objective evidence in support of her opinion, and merely attributed Plaintiff's emotional difficulties to financial strain (Tr. 719).

The ALJ also stated that Dr. Smith's opinion was inconsistent with Dr. Cho's findings and Plaintiff's own statements regarding her abilities (Tr. 51).  *See* 20 C.F.R. § 404.1527(d)(4) (generally, the more consistent an opinion is with the record as a whole, the more weight the agency will give to that opinion).  During Dr. Cho's psychiatric consultative examination, Plaintiff demonstrated that she was able to retain memory, generally make calculations, exercise judgment, and recognize similarities and differences (Tr. 596-97).  In addition, Plaintiff was oriented and her conversation was coherent and relevant (Tr. 596).   Plaintiff argues that Dr. Cho's findings are entirely consistent with Dr. Smith's opinion (Pl.'s Brief at 18).  Although both doctors observed that

-17-

Plaintiff had mental problems, Dr. Cho's report reflected that Plaintiff nevertheless retained sufficient mental abilities to work, which undermines Dr. Smith's opinion that Plaintiff could not work due to emotional reasons.

Dr. Smith's opinion was also inconsistent with other medical reports. Dr. Fichtenberg reported that Plaintiff's attention, learning, cognition, and memory were intact and normal (Tr. 665-66). Dr. Smith's opinion that Plaintiff could not work was also inconsistent with Dr. Beshears' treatment notes. Indeed, Plaintiff was working throughout the majority of the time that she was being treated by Dr. Beshears (Tr. 364-452). Dr. Beshears' notes from after Plaintiff's alleged onset date reveal that Plaintiff was emotionally stable (Tr. 483, 486, 489). These notes undermine Dr. Smith's opinion that Plaintiff was incapable of working due to emotional instability (Tr. 719).

The ALJ also noted that Dr. Smith's opinion was inconsistent with Plaintiff's own statements regarding her daily activities (Tr. 51). Plaintiff lived with her young daughter, for whom she cared (Tr. 142). She was able to manage her personal care, prepare simple meals, perform light housework, drive a car, leave home alone, and go shopping (Tr. 142-45). Plaintiff was also able to pay her bills, count change, handle a savings account, and use a checkbook (Tr. 154). Plaintiff also indicated that she could follow written instructions if they were not long or detailed, and that she was much better at following spoken instructions than written instructions (Tr. 147). Plaintiff's ability to care for herself, manage her own funds, and follow instructions do not square with a disabling mental impairment. Instead, Plaintiff's statements reflect that she retained the mental capacity to carry out basic activities, which is inconsistent with Dr. Smith's opinion that Plaintiff's psychological issues rendered her unable to work. The ALJ thus reasonably gave little weight to Dr. Smith's conclusory legal opinion and I find no error necessitating a remand.

As to Plaintiff's physical limitations, the ALJ relied on Plaintiff's treating specialist, Dr. Hyman, and Dr. Nasol, a state agency doctor, and gave less weight to portions of Dr. Foster's opinion (Tr. 46, 49-50). The Sixth Circuit has upheld an ALJ's reliance on a non-examining reviewer over an examining source by explaining, "[t]his Court generally defers to an ALJ's decision to give more weight to the opinion of one physician than another where, as here, the ALJ's decision is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record." *Cox v. Comm'r of Soc. Sec.*, 295 F. App'x 27, 35 (6th Cir. 2008) (citing *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391-92; *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 372-73 (6th Cir. 2006); *Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194, 197 (6th Cir. 2004).

The state agency doctor – Dr. Nasol – reviewed Plaintiff's records and found that Plaintiff's complaints of severe pain in her upper and lower extremities were poorly supported by the objective medical data and that her functional limitations were primarily due to her mental issues (Tr. 599). Dr. Nasol found that Plaintiff could lift ten pounds frequently and twenty pounds occasionally, and stand/walk for about six hours in an eight-hour day and sit for about six hours in an eight-hour day (Tr. 599). Dr. Nasol also found that, overall, Plaintiff was not significantly limited physically and that she was capable of managing her own personal care (Tr. 600). This opinion was consistent with treating physician Dr. Hyman's opinion that Plaintiff had minimal functional limitations and could work in a clerical position (Tr. 321, 324).

The ALJ expressly stated that he was crediting Dr. Foster's opinion with respect to Plaintiff's lifting, carrying, and postural limitations, but stated that the restrictions of a sit/stand option and standing/walking less than two hours in an eight-hour workday were not supported by the record (Tr. 50). The ALJ also implicitly rejected Dr. Foster's opinion that Plaintiff would need to be absent

greater than four days per month and incapable of even "low stress" jobs because the ALJ found that Plaintiff could perform low-stress work and did not grant Plaintiff any excess absences (Tr. 45).

A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see Cox v. Comm'r of Soc. Sec.*, 295 F. App'x 27, 35 (6th Cir. 2008) ("This court generally defers to an ALJ's decision to give more weight to the opinion of one physician than another, where, as here, the ALJ's opinion is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record."). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *see also Kidd v. Comm'r of Soc. Sec.*, 283 F. App'x 336, 340 (6th Cir. 2008). An opinion that is based on Plaintiff's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876-77 (6th Cir. 2007).

I find that the ALJ gave "good reasons" for discounting portions of Dr. Foster's opinion (Tr. 50). The ALJ reasonably found that Dr. Foster's opinion was unsupported by his own treatment notes because he did not provide any clinical tests to evaluate Plaintiff's abilities, and had not imposed any functional restrictions on Plaintiff in the past (Tr. 50). *See* 20 C.F.R. § 404.1527(d)(3) (the more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight the agency will give that opinion). In fact, Dr. Foster himself once said that Plaintiff could work (Tr. 590). Furthermore, Dr. Foster's opinion that Plaintiff could not work was inconsistent with the opinion from Dr. Hyman, a specialist who also treated Plaintiff, and found minimal functional limitations, and who opined that Plaintiff could work in a

clerical position (Tr. 50).  Dr. Hyman was a specialist, and the regulations give more weight to specialists.  *See* 20 C.F.R. § 404.1527(d)(5).  In sum, given other medical evidence suggesting that Plaintiff retained the ability to work, the ALJ gave good reasons, supported by substantial evidence, for giving Dr. Foster's opinion less than controlling weight.

In sum, I find that the ALJ's findings were well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and accordingly, should not be disturbed by this Court. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986) (*en banc*)

## III.    RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, that Defendant's motion for summary judgment be **GRANTED** and that the findings and conclusions of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless,

by motion and order, the page limit is extended by the court.  The response shall address  each issue

contained within the objections specifically and in the same order raised.

s/Mark A. Randon
Mark A. Randon
United States Magistrate Judge

Dated:  November 18, 2011

<u>Certificate of Service</u>

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, November 18, 2011, electronically.*

*s/Melody R. Miles*
*Case Manager to Magistrate Judge Mark A. Randon*
*(313) 234-5542*